118 T.C. No. 10


UNITED STATES TAX COURT



MICHAEL E. NESTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5372-00L.                Filed February 19, 2002.


     This opinion addresses petitioner's (P) 1992
through 1997 (1992-97) tax years.

     Respondent (R) issued notices of deficiency to
petitioner (P) for tax years 1990 through 1997 (1990-
97).  P received the notices of deficiency for tax
years 1992-97 but did not file a petition for
redetermination with the Court.  R issued to P a notice
of intent to levy with respect to P's taxes due for tax
years 1990-97.  P requested and R held a hearing
pursuant to sec. 6330(b), I.R.C., relating to P's tax
years 1990-97.  In his request for a hearing, P
requested that R provide him copies of the assessment
records.  At the hearing, R did not permit P to
challenge his underlying tax liability for tax years
1990-97.  After the hearing, R sent a notice of
determination to P stating that collection of his tax
liability for 1990-97 would proceed.  R provided
assessment records to P after the hearing and before
the trial in this case.

Held:  P may not contest his underlying tax liability for tax years 1992-97 because P received notices of deficiency for those years.  Sec. 6330(c)(2)(B).

Held, further, R's determination to proceed with collection with respect to P's tax years 1992-97 was not an abuse of discretion.

Michael E. Nestor, pro se.

David C. Holtz, for respondent.

COLVIN, Judge:  On April 7, 2000, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Sections 6320 and/or 6330 (the lien or levy determination), in which respondent determined to proceed with collection of deficiencies in petitioner's income tax, additions to tax, interest, and the frivolous return penalty[1] for 1990 through 1997 (1990-97).

In this opinion, we decide:

(1)  Whether petitioner may contest his underlying tax liability for tax years 1992-97.  We hold that he may not.

(2)  Whether respondent's determination to proceed with collection with respect to petitioner's tax years 1992-97 was an abuse of discretion.  We hold that it was not.

---

[1]  We will dismiss for lack of jurisdiction the portion of this case that relates to the frivolous return penalties for tax years 1992-97.  Van Es v. Commissioner, 115 T.C. 324, 328-329 (2000).

Section references are to the Internal Revenue Code as amended.

                          FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in California when he filed the petition in this case.

A.   Petitioner's Tax Returns and the Notices of Deficiency

Petitioner filed purported Federal income tax returns for 1990-96 in May 1997, and he timely filed a purported 1997 return on April 15, 1998.[2]  On each return, he reported that he had no wages, other income, or tax liability.  After petitioner filed those tax returns and before October 1999 (when respondent issued the notice of intent to levy discussed at paragraph B, below), respondent assessed the frivolous return penalty under section 6702 for 1990-97.

Respondent issued notices of deficiency to petitioner for each of his 1990-97 tax years determining deficiencies and additions to tax as follows:

_____

[2]  Petitioner's 1997 return bears the date "04-14-97".  The parties stipulated that petitioner filed his 1997 return on or before Apr. 15, 1998.

|  |  | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a) | Sec. 6654 |
| 1990 | $2,006 | $493.00 | $129.46 |
| 1991 | 1,834 | 455.75 | 104.73 |
| 1992 | 2,201 | 550.25 | -0- |
| 1993 | 2,021 | 493.75 | -0- |
| 1994 | 1,954 | 254.02 | -0- |
| 1995 | 2,899 | 202.93 | -0- |
| 1996 | 2,951 | 29.49 | 156.93 |
| 1997 | 2,996 | 89.88 | -0- |

Petitioner received the notices of deficiency for 1992-97, but he did not file a petition for redetermination of the deficiencies for 1992-97.

B.  The Lien and Levy Proceeding

On October 21, 1999, respondent issued to petitioner a Notice of Intent to Levy and Notice of Your Right to a Hearing relating to petitioner's 1990-97 tax years.  On November 17, 1999, petitioner filed a Request for a Collection Due Process Hearing, Form 12153, for tax years 1990-98[3] in which he contended:  (1) There was "no valid, underlying assessment" of taxes; (2) he did not receive the "statutory 'notice and demand'" for payment of the taxes at issue; (3) he did not receive a valid notice of deficiency; and (4) he had no underlying tax liability. In his request for a hearing, petitioner asked that the Appeals officer have at the hearing:  (1) Verification that "the

---

[3]  The record is silent as to why petitioner requested a hearing with respect to tax year 1998.  Because respondent's notice of intent to levy did not include 1998, that year is not in issue here.

requirements of any applicable law or administrative procedure have been met", for example, a copy of the statutory notice and demand for payment; (2) a copy of Form 23C, Summary Record of Assessment, and the "pertinent parts of the assessment which set forth the name of the taxpayer, the date of the assessment, the character of the liability assessed, the taxable period, and the amount assessed"; (3) delegation of authority from the Secretary to the person (other than the Secretary) who signed the verification required under section 6330(c)(1); and (4) proof that notices of deficiency were sent to petitioner.

C.  The Section 6330 Hearing and Respondent's Notice of Determination

On December 28, 1999, respondent's Appeals Office conducted a hearing in petitioner's case for tax years 1990-97.  Petitioner attended the hearing.  He was not given an opportunity to challenge his underlying tax liability for 1990-97 at the hearing.  At the hearing, he asked the Appeals officer to provide verification that the requirements of any applicable law or administrative procedures had been met, to give him copies of a notice and demand for payment, and to show him "anything that indicated [he] owed income tax" or that he was required to pay Federal income tax.  The Appeals officer did not comply with petitioner's requests and told petitioner that the hearing was limited to alternatives to collection.  At the hearing, petitioner did not challenge the appropriateness of the intended

method of collection, offer an alternative means of collection, or raise a spousal defense to collection.

On April 7, 2000, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (the determination letter), in which respondent stated that all applicable laws and administrative procedures had been met and that collection from petitioner of his tax liability for 1990-97 would proceed. On May 8, 2000, petitioner filed a petition for lien or levy action under section 6320(c) or 6330(d).

OPINION

A.  Whether Petitioner May Contest His Underlying Tax Liabilities for 1992-97

Petitioner contends that he was improperly precluded at the section 6330 hearing from challenging his underlying tax liability for tax years 1992-97. He bases this on the claim that the notices of deficiency he received were not valid because they were not prepared or issued by the Secretary and because the Director of the Service Center who prepared and issued them did not give petitioner a copy of the order delegating authority from the Secretary to her.

Petitioner's contention lacks merit. The Secretary or his delegate may issue notices of deficiency. Secs. 6212(a), 7701(a)(11)(B) and (12)(A)(i). The Secretary's authority to issue notices of deficiency was delegated to the District

Director and also to the Director of the Service Center who issued the notices of deficiency in this case. See Stamos v. Commissioner, 95 T.C. 624, 630-631 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992); Kellogg v. Commissioner, 88 T.C. 167, 172 (1987); Perlmutter v. Commissioner, 44 T.C. 382, 385 (1965), affd. 373 F.2d 45 (10th Cir. 1967); secs. 301.6212-1(a), 301.7701-9(b), Proced. & Admin. Regs. A taxpayer may contest the existence or amount of the underlying tax liability at the section 6330(b) hearing only if the taxpayer did not receive a notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Section 6330(c)(2)(B) bars petitioner from contesting the existence or amount of his tax liabilities for 1992-97 because he received notices of deficiency for those years.

B.  Whether Respondent's Determination To Proceed With Collection as to Petitioner's 1992-97 Tax Years Was an Abuse of Discretion

The Appeals officer verified that the Internal Revenue Service (IRS) had met the requirements of any applicable laws and administrative procedures. See sec. 6330(c)(1); sec. 301.6330-1(e)(1), Proced. & Admin. Regs. The second sentence of section 6203 provides that the Secretary shall, upon request of the taxpayer, provide the taxpayer a copy of the record of assessment.

Petitioner points out that the Appeals officer did not have at the hearing the documents (the notice and demand for payment, verification that the requirements of applicable law or administrative procedure have been met, Form 23C, other assessment records, and the delegation order to the person other than the Secretary who signed the verification) that petitioner had requested in his request for a section 6330(b) hearing. Petitioner contends that he was entitled to receive assessment records under section 6203. Petitioner also contends that the Appeals officer's verification was incorrect, and that the assessments were invalid, because he did not receive those documents at the hearing. The Appeals officer used Forms 4340, Certificate of Assessments and Payments, to verify the assessments. Even though petitioner specified Form 23C, it was not an abuse of discretion for the Appeals officer to use Forms 4340 for purposes of complying with section 6330(c)(1). Davis v. Commissioner, 115 T.C. 35, 41 (2000).

Section 6330(c)(1) does not require the Appeals officer to give the taxpayer a copy of the verification that the requirements of any applicable law or administrative procedure have been met. Section 301.6330-1(e)(1), Proced. & Admin. Regs., supra, requires that the Appeals officer obtain verification before issuing the determination, not that he or she provide it to the taxpayer. There is no requirement under internal revenue laws or regulations that the Appeals officer give the taxpayer a

copy of the delegation of authority from the Secretary to the person (other than the Secretary) who signed the verification required under section 6330(c)(1).

The Appeals officer did not give petitioner a copy of the record of assessment at or before the hearing as petitioner had requested. Respondent gave petitioner copies of the Forms 4340 prior to the trial in this case. The Forms 4340 that respondent gave petitioner before trial showed that the amounts at issue were properly assessed, and petitioner did not show at trial any irregularity in the assessment procedure that would raise a question about the validity of the assessments. Requiring the Appeals officer to provide petitioner with a second copy of petitioner's Forms 4340 at this time would delay disposition of this case. Petitioner was not prejudiced in any way by the fact that he first received copies of those records after the section 6330 hearing. Thus, whether or not the second sentence of section 6203 is an "applicable law or administrative procedure" referred to in section 6330(c)(1), it is clear that no bona fide interest would be served by further delaying the collection of petitioner's tax liability for 1992-97.

Petitioner contends that the notice of intent to levy improperly failed to identify the Code sections which establish his alleged tax liability. He contends that the assessment of tax was improper because he filed tax returns for 1990-97 which showed that he owed no income taxes for those years. He also

asserts that respondent may not assess tax because section 6201 provides for self-assessment and only petitioner can determine what tax he owes.

Petitioner's contentions are frivolous.  There is no requirement that the notice of intent to levy identify the Code sections which establish the taxpayer's liability for tax, additions to tax, or penalties.

Section 6330(c)(2)(A) permits a taxpayer to challenge the appropriateness of the intended method of collection, offer alternatives to collection, or raise a spousal defense to collection.  Petitioner gives no bona fide basis for his claim that the collection action was not appropriate.  We conclude that respondent's determination to proceed with collection of the tax liabilities assessed against petitioner for those years was not an abuse of discretion.[4]

Accordingly,

<u>An appropriate order</u>

<u>will be issued.</u>

Reviewed by the Court.

WELLS, COHEN, GERBER, RUWE, WHALEN, HALPERN, and THORNTON, <u>JJ</u>., agree with this majority opinion.

MARVEL, <u>J</u>., concurs in result only.

---

[4]  We also hold herein that petitioner's contentions discussed in par. B (slip op. pp. 7-10) lack merit for years 1990-91.

SWIFT, <u>J</u>., concurring: Arguably, the majority opinion treats all "assessment records" as if they are the same, and states overly broadly (majority op. p. 8) that "Section 6330(c)(1) does not require the Appeals officer to give the taxpayer a copy of the verification that the requirements of any applicable law or administrative procedure have been met." The quoted language is susceptible of being read to mean that Appeals officers need not give or show to taxpayers copies of computerized transcripts of account or Forms 4340.

Surely, we need not so hold in this case. Petitioner is not making that argument. At the Appeals hearing herein, the Appeals officer had a copy of the computerized transcript of account or Forms 4340 relating to petitioner, and nothing in the opinion suggests that the Appeals officer refused to provide petitioner with a copy of those specific documents.[1]

---

[1] Repeatedly, in connection with the Appeals hearing and the litigation herein, petitioner insisted that he be provided not with a transcript of account or a Form 4340, but rather with a Form 23C and with the Summary Record of Assessment "as provided for in sec. 301.6203-1, Proced. & Admin. Regs." At the Appeals hearing, petitioner was not interested in obtaining from respondent a copy of the transcript of account or the Form 4340. Like many other tax protesters, petitioner does not regard a computerized transcript of account or a Form 4340 as satisfying either the verification requirements of sec. 6330(c)(1) or the documentation provisions of sec. 301.6203-1, Proced. & Admin. Regs. E.g., <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 187-189 (2001); <u>Davis v. Commissioner</u>, 115 T.C. 35, 40-41 (2000).

As we noted in <u>Davis v. Commissioner</u>, 115 T.C. 35, 41 (2000), procedures in collection hearings under section 6330 were intended by Congress to be handled in a manner similar to procedures used in traditional Appeals hearings. For years, as far as I know without exception and long before enactment of sections 6320 and 6330, respondent's audit and Appeals representatives, in all collection contexts, have provided to taxpayers copies of transcripts of account and of Forms 4340 relating to the taxpayers. I hope that this opinion will not be read to suggest that such documents, easily and routinely obtained by respondent's collection personnel and by respondent's Appeals officers, need no longer be made available to taxpayers and to their representatives, particularly in collection contexts. The new collection procedures under sections 6320 and 6330 should not be interpreted to change the routine availability to taxpayers from respondent's representatives of transcripts of account and of Forms 4340.

In light of comments made in Judge Foley's dissenting opinion regarding the relationship of the verification requirements of section 6330(c)(1) with taxpayers' rights under section 6203 (and the related regulations) to obtain from respondent a copy of the "record of the assessment", some further comments are appropriate regarding those two quite different

statutory provisions.  In collection hearings, respondent has certain specified verification requirements under section 6330(c)(1) relating to proposed collection activity.  We held in Davis v. Commissioner, supra at 41, that, absent irregularities, the verification requirement with regard to the existence of an assessment (an "applicable" administrative procedure) is satisfied if the Appeals officers obtain Forms 4340 or transcripts of account which corroborate the relevant assessment information regarding the taxpayers.

Under section 6203, taxpayers have a right to request and to receive a copy of "the record of assessment", and if not delivered to the taxpayers by respondent, taxpayers may have a right to sue respondent under the Freedom of Information Act, 5 U.S.C. sec. 552 (2001), and section 601.702(c)(11), Statement of Procedural Rules, to require respondent to provide the documents requested.  See, e.g., Dickstein v. IRS, 846 F.2d 1382 (9th Cir. 1988).  In my opinion, that right of taxpayers under section 6203 is not part of respondent's verification requirements under section 6330(c)(1).

Further consideration of other provisions of section 6330 buttresses this analysis.  It is helpful to look closely at the specific language not only of section 6330(c)(1), but also of section 6330(c)(2) and (3).  Section 6330(c)(1) imposes the

affirmative verification requirements on respondent with regard to "applicable law or administrative procedure".  The verification requirements are independent of any issue raised by taxpayers.  In this case, any holding that respondent has not satisfied that duty would be inconsistent with <u>Davis v. Commissioner</u>, <u>supra</u>.

Section 6330(c)(2) then provides that taxpayers may raise at collection hearings any "relevant" issue.  It does not say that taxpayers may raise "any" issue or that the Appeals officers should guess as to what issues the taxpayers might have raised.

Section 6330(c)(3) provides similar, express language limiting the scope of collection hearings.  Section 6330(c)(3)(B) states that Appeals officers need only consider the "issues raised" by taxpayers, and section 6330(c)(3)(C) states that only "legitimate" concerns of taxpayers need be taken into account in considering the need for efficient collection action.

Accordingly, and particularly where taxpayers are making tax protester arguments, in collection hearings under section 6330(b) and in subsequent court proceedings, only issues that are actually raised by taxpayers and that constitute relevant, legitimate, and good faith issues need be considered by Appeals officers and by the courts.

The referenced statutory language suggests strongly to me,

and I would so hold, that issues not raised, as well as tax protester issues, need not be considered by Appeals officers in collection hearings under section 6330(b) and that tax protester issues may and should be summarily dismissed by the courts. Further, Appeals officers and the courts need not speculate about what issues taxpayers might have raised were they not tax protesters or were they represented by other lawyers.[2]

Petitioner herein is a flagrant tax protester. Petitioner did not file his 1990-96 income tax returns until 1997. On the late-filed tax returns petitioner reflected no financial information. Petitioner claimed his wages were not income. At the evidentiary hearing before the Court, petitioner asserted: "Since income taxes are based on self assessment, under Code section 6201, I, alone, can determine what I owe".

At the Appeals hearing and at the hearing before the Tax Court in this case, petitioner raised no relevant, legitimate, or good faith issue, and we have no business speculating as to whether petitioner may ever raise any such issue. The maxim, "Justice delayed is justice denied", applies not only to cases eventually decided in favor of taxpayers but also to cases to be

_____

[2] In the final regulations under sec. 6330, the position is taken that taxpayers may raise in court only issues that actually were raised by the taxpayers at the Appeals hearings. T.D. 8979, 2002-6 I.R.B. 466; T.D. 8980 Q&A-F5, 2002-6 I.R.B. 477, 487.

decided in favor of respondent, particularly those involving a postponement of tax collection.

Respectively, in my opinion, arguments made by taxpayers in administrative and court hearings under sections 6320 and 6330 that implicate only frivolous arguments and that implicate the postponement of the collection of taxes owed, should be dealt with by respondent's Appeals Office and by this Court summarily and decisively.

HALPERN, J., concurring:  I agree with the majority that, if in determining to proceed with collection, respondent erred in informing petitioner that all applicable laws and administrative procedures had been met, such error was harmless error.  I write separately to express my views as to why the majority is correct.

I.  Introduction

Petitioner requested and received a so-called collection due process hearing.  At that hearing, the Appeals officer was required to obtain verification that the requirements of any applicable law or administrative procedure had been met.  Sec. 6330(c)(1).  Following the hearing, the Appeals officer informed petitioner that all applicable laws and administrative procedures had been met and that collection from petitioner of his tax liability for 1990 through 1997 would proceed.  Petitioner contends that he was entitled to receive assessment records under section 6203.[1]  The majority finds:

> The Appeals officer did not give petitioner a copy
> of the record of assessment at or before the hearing as

---

[1]  Sec. 6203 provides:

SEC. 6203.  METHOD OF ASSESSMENT.

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.  Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment.  [Emphasis added.]

petitioner had requested. Respondent gave petitioner copies of the Forms 4340 prior to the trial in this case. The Forms 4340 that respondent gave petitioner before trial showed that the amounts at issue were properly assessed, and petitioner did not show at trial any irregularity in the assessment procedure that would raise a question about the validity of the assessments. * * * <u>Petitioner was not prejudiced in any way by the fact that he first received copies of those records after the section 6330 hearing</u>. * * * [Majority op. p. 9; emphasis added.]

As will be shown, a person seeking judicial review of agency actions bears the burden of demonstrating prejudice from any error. Since petitioner did not show prejudice, the "rule of prejudicial error" is applicable, and petitioner is entitled to no relief.

## II. <u>Administrative Procedure Act</u>

I have previously stated my belief that various provisions of the Administrative Procedure Act, 5 U.S.C. secs. 551-559, 701-706 (1994) (hereafter, sections of which are cited as 5 U.S.C.), inform our authority under section 6330(d)(1)(A) to review a determination made by an Appeals officer pursuant to section 6330(c)(3). <u>Lunsford v. Commissioner</u>, 117 T.C. 159, 165, 167-168 (2001) (Halpern, J., concurring).

Among the applicable APA provisions is 5 U.S.C. sec. 706, which, in pertinent part, provides:

<u>Scope of review</u>

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and

statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall--

   (1) compel agency action unlawfully withheld or unreasonably delayed; and

   (2) hold unlawful and set aside agency action, findings, and conclusions found to be--

     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

               *   *   *   *   *   *   *

     (D) without observance of procedure required by law;

               *   *   *   *   *   *   *

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, <u>and due account shall be taken of the rule of prejudicial error</u>.  [Emphasis added.]

The "rule of prejudicial error" (otherwise the doctrine of harmless error), as applied to an administrative action, provides that the reviewing court shall disregard procedural errors unless the complaining party was prejudiced thereby.  As recently summarized by the Court of Appeals for the First Circuit:

     The doctrine of harmless error is as much a part of judicial review of administrative action as of appellate review of trial court judgments.  Indeed, the Administrative Procedure Act, 5 U.S.C. § 706, says that in reviewing agency action, the court "shall" take due account of "the rule of prejudicial error," <u>i.e.</u>, whether the error caused actual prejudice.  And while many of the decisions involve harmless substantive mistakes, no less an authority than Judge Friendly [in <u>Kerner v. Celebrezze</u>, 340 F.2d 736, 740 (2d Cir. 1965)] has applied the harmless error rule to procedural error, as has the circuit [Court of Appeals for the

District of Columbia Circuit] that most often reviews agency action.  [Save Our Heritage, Inc. v. F.A.A., 269 F.3d 49, 61 (1st Cir. 2001); fn. ref. omitted.]

The Court of Appeals added:

Obviously, a court must be cautious in assuming that the result would be the same if an error, procedural or substantive, had not occurred, and there may be some errors too fundamental to disregard.  But even in criminal cases involving constitutional error, courts may ordinarily conclude that an admitted and fully preserved error was "harmless beyond a reasonable doubt."  Agency missteps too may be disregarded where it is clear that a remand "would accomplish nothing beyond further expense and delay."  [Id. at 61-62; emphasis added; citations omitted.]

The party seeking judicial review of an agency action bears the burden of demonstrating prejudice from any error.  DSE, Inc. v. United States, 169 F.3d 21, 31 (D.C. Cir. 1999) ("Under the APA, we will not set aside agency action unless the party asserting error can demonstrate prejudice from the error" (internal quotation marks and brackets omitted)).[2]

It is no bar to application of the doctrine of harmless error that the agency error complained of is the omission of a statutory prerequisite.  See, e.g., Hydro Engg., Inc. v. United

---

[2]  In certain circumstances, sec. 7491(a) imposes on the Commissioner the burden of proof in connection with factual issues relevant to determining the liability of the taxpayer for any income, estate, or gift tax.  See sec. 7491(a)(1).  Even if sec. 7491(a) is applicable to the determination of whether petitioner has demonstrated prejudice, petitioner has failed to introduce credible evidence of prejudice and, thus, must carry the burden of proof.  See sec. 7491(a)(1).

<u>States</u>, 37 Fed. Cl. 448, 477 (1997) ("The standard of review for the denial of a procedural right at the agency level, <u>even one that is statutory</u>, is harmless error." (Emphasis added.)). The reviewing court must consider whether deviation from the requirements of the statute would affect the interests that the statute is designed to protect and must take into account the general principle that public rights should not be prejudiced because of immaterial errors on the part of public servants. <u>Intercargo Ins. Co. v. United States</u>, 83 F.3d 391, 395 (Fed. Cir. 1996) (citing <u>Brock v. Pierce County</u>, 476 U.S. 253, 260 (1986), in which the Court said: "We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake.").

III. <u>Discussion</u>

Section 6203 provides that, on request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of assessment. Section 6203 does not provide any remedy for the Secretary's failure to comply. In <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 63 (1993), in connection with agency disregard of statutorily imposed timing requirements, the Supreme Court stated: "We have held that if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." The Court relied on <u>United</u>

States v. Montalvo-Murillo, 495 U.S. 711, 717 (1990) (failure to comply with Bail Reform Act's prompt hearing provision) for the following proposition:  "There is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent."  See also Diaz v. Dept. of the Air Force, 63 F.3d 1107, 1109 (Fed. Cir. 1995) ("An agency's violation of a statutory procedural requirement does not necessarily invalidate the agency action, especially where Congress has not expressed any consequences for such a procedural violation.").

In effect, section 6330(c)(3)(A) provides that, prior to making his determination to proceed with collection, an Appeals officer shall obtain verification that all applicable laws or administrative procedures have been met.  See sec. 6330(c)(1), (3)(A).  As Judges Foley's and Swift's separate opinions in this case show, it is debatable whether section 6203 is an applicable law.  Assuming that it is, however, the majority has concluded that petitioner was not prejudiced in any way by the delay in providing him with the required record.  The Appeals officer's verification that all applicable laws had been met may have been in error; nevertheless, the majority has, in effect, concluded that it was harmless error.  Given the lack of a specific remedy

in section 6203 and respondent's eventual compliance with the statute (without demonstrable prejudice to petitioner), I agree with the majority's conclusion: "Requiring the Appeals officer to provide petitioner with a second copy of petitioner's Forms 4340 at this time would [needlessly] delay disposition of this case." Majority op. p. 9.

IV. Conclusion

If the Appeals officer committed error at all, it was harmless. Petitioner has failed to show that the Appeals officer's determination would have differed in the slightest if petitioner had been provided the assessment record prior to or at the Appeals hearing. The majority is correct.

WHALEN and THORNTON, JJ., agree with this concurring opinion.

BEGHE, J., concurring:  The majority acknowledge that section 6203 requires the Secretary, upon request of the taxpayer, to furnish the taxpayer a copy of the record of the assessment but observe that neither section 6330(c)(1) nor the regulations thereunder require the Appeals officer to furnish "the taxpayer a copy of the verification that the requirements of any applicable law or administrative procedure have been met." Majority op. p. 8.  Nor, I would add, does section 6330(c)(1) by its terms require the Appeals officer to furnish a copy of the record of the assessment at the hearing.  However, as the dissent points out, it is difficult to see how the Appeals officer could have verified that the requirements of all applicable laws had been met when respondent had not complied with section 6203.

In any event, it should be standard procedure in collection cases for the Appeals officer, no later than the commencement of the hearing, to furnish the taxpayer a Form 4340 confirming the assessment.  In so doing, the Appeals officer will provide the taxpayer minimum assurance that the amounts claimed by the Service in the lien or levy proceeding notice are due and owing. By furnishing the taxpayer a Form 4340 at or before the hearing, the Service will remove any excuse of the taxpayer for not coming to grips with the relevant issues described in section 6330(c)(2).

In the case at hand, the Appeals officer's failure to furnish the taxpayer a Form 4340 at or before the hearing was

harmless error.  As the majority correctly hold, no purpose would be served by remanding this case for a hearing when the only defect was the Appeals officer's failure to provide a document that has now been provided, and which conclusively establishes the obligation that the Service seeks to enforce.

Because petitioner has already shown a penchant for causing delay and taking frivolous and groundless positions, this is not an appropriate case for imposing any sanction on respondent for delay in furnishing the Form 4340.  However, a taxpayer who could show that he suffered genuine harm as a result of the Service's delay in furnishing the Form 4340 should be entitled to a remedy.  Cf. Shea v. Commissioner, 112 T.C. 183, 207-209 (1999).  For example, a taxpayer who shows that respondent's delay in furnishing Form 4340 caused the taxpayer to incur additional interest, and that no significant aspect of the delay can be attributed to the taxpayer, might be entitled to an abatement of interest under section 6404(e) from the date of the administrative hearing until the Service furnishes the taxpayer Form 4340.  By providing evidence of the assessment at or before the hearing as a matter of course, the Service satisfies section 6203, and avoids unnecessary delay and expense and any possible sanction.

I dissented in dismay in Johnson v. Commissioner, 117 T.C.

204, 218 (2001), from the Court's continued abstention from taking jurisdiction in collection disputes over the $500 section 6702 frivolous return penalty.  Our decision in <u>Johnson</u> required that the case be dismissed, entitling a taxpayer patently seeking delay to achieve his goal by refiling in the District Court.  I concur that the <u>Johnson</u> precedent requires us to dismiss the portion of the case at hand that relates to the frivolous return penalties.  This will allow petitioner to refile the frivolous return penalty issue for all years (1990-1997) in the District Court, even as collection of the assessed deficiencies in petitioner's income tax, additions to tax, and interest for the years 1992-1997, goes forward.  The resultant splitting of what should have been and remained one collection proceeding will entail an absurd waste of time and other resources.

I renew my plea for congressional enactment of an explicit grant of jurisdiction to this Court to provide one-stop shopping in all cases under sections 6320 and 6330.  A possible model is the amendment of section 6214(a) by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1554(a), 100 Stat. 2754, which furnished jurisdiction to the Tax Court to review the Commissioner's determination to collect the addition to tax under section 6651(a)(2).  See <u>Downing v. Commissioner</u>, 118 T.C. ___, ___ (2002) (slip op. at 7).

LARO, J., concurring in result: The majority holds that "respondent's determination to proceed with collection of the tax liabilities assessed against petitioner for those [1992-1997] years was not an abuse of discretion." Maj. op. p. 10. On the basis of this Court's opinion in Lunsford v. Commissioner, 117 T.C. 183 (2001) (Lunsford II), a decision with which I dissented and continue to disagree, but for which I shall respectfully follow as the view of this Court, I agree with the majority's holding.[1] As was true in Lunsford II, petitioner has failed to advance in this proceeding any bona fide argument that makes it "either necessary or productive to remand this case to IRS Appeals to consider". Id. at 189. A holding for respondent is therefore appropriate.

I also write to clarify my understanding of the Court's rejection of petitioner's argument that the Appeals officer

---

[1] I note in passing, however, that Lunsford II appears to have been sapped of some of its vitality by the Treasury Department's recent release of final regulations under sec. 6330. The majority in Lunsford II did not require the Office of Appeals (Appeals) to conduct a face-to-face collection due process (CDP) hearing with the taxpayers even though the taxpayers had alleged in their petition that they wanted such a face-to-face hearing and that the absence of a face-to-face hearing deprived them of their right to present their case. Lunsford v. Commissioner, 117 T.C. 183, 191 (2001) (Laro, J., dissenting). Whereas the final regulations under sec. 6330 observe that a CDP hearing need not be held face-to-face, the regulations indicate that the taxpayer may demand that a CDP hearing be scheduled face-to-face. The regulations mandate that a taxpayer who requests a face-to-face CDP hearing "must be offered an opportunity for a hearing at the Appeals office closest to the taxpayer's residence or, in the case of a business taxpayer, the taxpayer's principal place of business." Sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs.

failed to verify that the requirements of any applicable law or administrative procedures had been met.  Maj. op. p. 8.  As was true here, and as was true in <u>Davis v. Commissioner</u>, 115 T.C. 35, 41 (2000), the case upon which the majority relies to reject that argument, the Court did not hold that an Appeals officer's reliance on Form 4340, Certificate of Assessments and Payments, was sufficient to meet section 6330(c)(1)'s requirement that "The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  In <u>Davis v. Commissioner</u>, <u>supra</u> at 40-41, and as was true here, majority op. p. 8, the narrow holding of the Court was that an Appeals officer may at the hearing rely on Form 4340 to verify that the taxes in question were assessed.

The fact that Form 4340 is insufficient compliance with section 6330(c)(1) in its entirety is seen by a plain reading of the relevant legislative history.  The Senate Finance Committee report provides that

> During the hearing, the IRS is required to verify that all statutory, regulatory, and administrative requirements for the proposed collection action have been met.  IRS verifications are expected to include (but not be limited to) showings that:
>
> (1) the revenue officer recommending the collection action has verified the taxpayer's liability;

(2) the estimated expenses of levy and sale will not exceed the value of the property to be seized;

(3) the revenue officer has determined that there is sufficient equity in the property to be seized to yield net proceeds from sale to apply to the unpaid tax liabilities; and

(4) with respect to the seizure of the assets of a going business, the revenue officer recommending the collection action has thoroughly considered the facts of the case, including the availability of alternative collection methods, before recommending the collection action.  [S. Rept. 105-174, at 68 (1998), 1998-3 C.B. 537, 604.[2]]

Form 4340 simply does not meet each of these verification requirements.  Form 4340 was sufficient both here and in <u>Davis</u> because the only irregularity alleged as to the verification requirement concerned the proper assessment.

VASQUEZ and GALE, <u>JJ</u>., agree with this concurring in result opinion.

---

[2] The fact that this quoted text relates solely to the verification requirement of sec. 6330(c)(1) is seen not only by reading the quoted text but by reading the text that appears immediately thereafter.  That text, which relates to sec. 6330(c)(2), provides:

The taxpayer (or affected third party) is allowed to raise any relevant issue at the hearing.  Issues eligible to be raised include (but are not limited to):
(1) challenges to the underlying liability as to existence or amount;
(2) appropriate spousal defenses;
(3) challenges to the appropriateness of collection actions; and
(4) collection alternatives, which could include the posting of a bond, substitution of other assets, an installment agreement or an offer-in-compromise.  [S. Rept. 105-174, at 68 (1998), 1998-3 C.B. 537, 604.]

FOLEY, J., dissenting:  In the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 746, Congress enacted sections 6320 and 6330 to provide safeguards for persons subject to collection actions. Sections 6320 and 6330 generally provide that respondent cannot proceed with collection until the taxpayer has been given notice and the opportunity for an Appeals Office hearing.  See sec. 6330(a)(1), (b)(1), (e)(1).  "In the case of any hearing conducted under * * * [section 6330] the appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  Sec. 6330(c)(1).

Petitioner contends that respondent's verification was incorrect because respondent did not, at the section 6330 hearing, provide him with proof of assessments.  I agree. Despite respondent's purported verification that all statutory or administrative procedures were met, respondent did not satisfy section 6203's requirement that the Secretary provide a copy of the record of assessment (e.g., Form 4340, Certificate of Assessments, Payments, and Other Specified Matters (Form 4340)) to the taxpayer upon his request.  Accordingly, respondent's verification was erroneous.

Section 6203 provides that "The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by

the Secretary.  Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment." The majority choose not to decide "whether * * * the second sentence of section 6203 is an 'applicable law or administrative procedure' referred to in section 6330 (c)(1)".  Majority op. p. 9.  Section 6203, in its entirety, is such a law.  Assessment is an integral part of the collection process, and the method by which respondent makes an assessment is prescribed in section 6203.  In addition, regulations promulgated by respondent provide that "If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed."  Sec. 301.6203-1, Proced. & Admin. Regs.  Furnishing Form 4340 to the taxpayer satisfies the requirements of section 6203.  See, e.g., Huff v. United States, 10 F.3d 1440, 1445 (9th Cir. 1993). Respondent, however, failed to adhere to section 6203 and section 301.6203-1, Proced. & Admin. Regs.  Thus, the Appeals officer incorrectly determined that the requirements of applicable laws were met.  See sec. 6330(c)(1).

Prior to the section 6330 hearing, respondent did not provide petitioner with Forms 4340.  Moreover, at the hearing, respondent did not allow petitioner to discuss the assessments.

Thus, respondent deprived petitioner of his right to raise relevant issues relating to the assessments. See sec. 6330(c)(2). The appropriate remedy is to have a further hearing on this matter. The majority may wonder what "bona fide interest would be served". In short, the "bona fide interest" served is compliance with the provisions of section 6330.

CHIECHI, J., agrees with this dissenting opinion.